IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | |
| BRADLEY J. YOUNG | ) | |
| Debtor | ) | Case No. 12-cv -00786 AJS |
| | ) | |
| | ) | |
| BRADLEY J. YOUNG | ) | Related to: |
| Appellant, | ) | Bankruptcy No. 11-26777 JAD |
| v. | ) | Adversary No. 11-2606 JAD |
| 1200 BUENA VISTA CONDOMINIUMS, | ) | |
| 1200 BUENA VISTA UNIT OWNERS | ) | |
| ASSOCIATION, CITY OF PITTSBURGH, | ) | |
| COUNTY OF ALLEGHENY, and | ) | |
| PNC BANK, N.A. | ) | |
| Appellees | ) | |

## BRIEF APPENDIX OF THE APPELLANT
(Part 3)

Phillip S. Simon
Pa. I.D. No. 36026
603 Washington Road, Suite 401
Pittsburgh, PA 15228
(412) 440-4470
(412) 531-0874 (fax)
simonlink1@verizon.net

Counsel for the Appellant, Bradley J Young

Table of Contents[1] Page

Part 1

**From Bankruptcy No. 11-26777 JAD ("2011 Case"):**

March 30, 2012 **Order of the Bankruptcy Court**...the Motion to Dismiss shall be not denied and
the Motion to extend Automatic Stay shall be granted ... the adversary proceeding shall be dismissed
(Document 53) (Order appealed). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1-2
March 30, 2012 **Memorandum Opinion of the Bankruptcy Court** in support of the Order,
published version at *In re Young*, 467 B.R. 792 (Bankr. W.D.Pa. (Document 52). . . . . . . . . . . . . . . . . . . .  3-18
Notice of Appeal filed April 13, 2012 by Bradley Young (Document 59)  . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

**From Bankruptcy No. 09-24934 JAD ("2009 Case"):**

Dockets from Bankruptcy No. 09-24934 JAD  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-22
Proof of Claim No. 5-2 of 1200 Condominiums and Buena Vista Unit Owners Association
filed August 18, 2009 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23-27
Objection to Claim No. 5-2 of the 1200 Buena Vista Condominiums filed by Bradley Young
(Document 46). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28-29
Part 2
Response to Debtor's Objection to Claim No. 5-2 by 1200 Buena Vista Condominiums (Document 51)  . . . . 30-33
Pretrial Statement filed by 1200 Buena Vista Condominiums (Document 73) . . . . . . . . . . . . . . . . . . . . . . 34-35
Memorandum Opinion and Order on Debtor's Objection to Claim No. 5-2 of
1200 Buena Vista Condominiums (Document 82) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

**From Bankruptcy No. 11-26777 JAD ("2011 Case"):**

Dockets from Bankruptcy No. 11-26777 JAD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37-45
Chapter 13 Voluntary Petition including schedules and statements (Document 1) . . . . . . . . . . . . . . . . . . .  46-47
Chapter 13 Plan (Document 9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48-50
Proof of Claim 5-1of 1200 Buena Vista Condominiums  and Buena Vista Unit Owners
Association filed December 15, 2011 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51-52

**From Adversary Proceeding No. 11-02606 JAD ("Adversary"):**

Dockets from Adversary Proceeding No. 11-02606 JAD  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53-56
Amended Complaint (correcting names in caption) filed by Bradley Young (Document 3)  . . . . . . . . . . . . . 57-62
Part 3
Answer to Amended Complaint filed by creditor 1200 Buena Vista Condominiums (Document 8)  . . . . . . . . 63-64

**From Bankruptcy No. 11-26777 JAD ("2011 Case"):**

**Motion to Dismiss Case** for Abuse filed by creditor 1200 Buena Vista Condominiums (Document 16)  . . . . 65-67
Response (**Debtor's Memorandum of Law in Opposition to Motion to Dismiss** (Document 34) . . . . . . . . 68-70
Report (**Submission of Additional documents for consideration** by the Court) filed by creditor 1200 Buena Vista
Condominiums (Document 37) **includes "Robinson case", Deed, Declaration and Bylaws** . . . . . . . . . . . 71-81
Reply Brief on the "Robinson case" regarding ... Motion to Dismiss Case, filed by the Debtor (Document 39)  82-83
Report (Supplemental Submission of Additional document for consideration by Court) filed by creditor 1200 Buena
Vista Condominiums (Document 40)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84
Certificate of Service

---

[1] All documents in the Appendix, except the first three, contain **selected pages only**. The documents
themselves have "electronic time stamps" with  page numbers, and therefore show the pages selected.

## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | |
|---|---|
| BRADLEY J. YOUNG, ) | |
| Debtor, ) | |
| ) | Bankruptcy Case No. 11-26777-JAD |
| BRADLEY J. YOUNG, ) | |
| Plaintiff, ) | Adversary Case No. 11-02606-JAD |
| vs. ) | |
| ) | Related to Docket No. 3 |
| 1200 BUENA VISTA CONDOMINIUMS, ) | |
| 1200 BUENA VISTA UNIT OWNERS ) | Chapter 13 |
| ASSOCIATION, CITY OF PITTSBURGH, ) | |
| COUNTY OF ALLEGHENY, and PNC ) | Hearing Date: Not Set |
| BANK, N.A., ) | |
| Defendants. ) | |

### ANSWER TO DEBTOR'S AMENDED ADVERSARY COMPLAINT

AND NOW comes the Defendants, 1200 Buena Vista Condominiums and 1200 Buena

Vista Unit Owners Association, by and through their counsel, GRIFFITH, McCAGUE &

WALLACE, P.C., a professional corporation, and files this Answer to the Debtor's Amended

Adversary Complaint of which the following is a statement:

### Parties, Jurisdiction and Venue

1.    Admitted.

2.    Denied. The Defendants hold a consensual and statutory lien against the

Property. Reducing the consensual statutory lien to judgment is part of the mandated

execution process and does not change the nature of the lien from a statutory lien to a

judicial lien.   28 Pa.C.S.A. §3315.

3.    Admitted.

63

U.S.C.A. §1322(b)(2).  Pursuant to 11 U.S.C. §1322(b)(2), the Defendants lien cannot be
stripped down by use of 11 U.S.C. 506.

    **15.**    Denied.  Debtor's real estate has a value of approximately $50,000 as
indicated by the Opinion of Value from Coldwell Banker.  The Defendants lien continues
to accrue by law and remains secured in at least the last six months of assessments, which
cannot be discharged by a sale on any of the allegedly prior liens.  28 Pa. C.S.A.
§3315(b)(2).  This includes the very significant charges incurred as part of the sheriff sale
(postponed by filing the instant petition).

    **16.**    Denied.  The secured claim of this creditor is secured only by a lien upon
the Debtor's principal residence.  Debtor admits the lien is at least partially secured under
his worst case analysis.  Pursuant to 11 U.S.C. 1322(b)(2) the lien cannot be stripped off
through 11 U.S.C. 506.  In re McDonald, 205 F.3d. 606, (3rd C, 2000).

WHEREFORE the Defendants, 1200 Buena Vista Condominiums and 1200 Buena Vista
Unit Owners Association, respectfully request this Honorable Court to deny and dismiss with
prejudice Count I of the Debtor's adversary action.

**Count II-Section 522(f) Action to Avoid Judgment Lien, only**

    **17.**    Paragraph 17 is an incorporation clause to which no response is required.

    **18.**    It is admitted that the Debtor claimed an exemption.  It is denied that the
condominium lien can be avoided under 11 U.S.C.A. §522.  This section applies only to
judicial liens.  The condominium's lien is a consensual statutory lien and is not subject to
the aforesaid section.  In Re: Johnson, 108 B.R. 81, (WD Pa., 1989).

    **19.**    It is admitted that this quote is part of the language of Section 522(f).  It is
denied that Section 522(f) is applicable in this case.  11 USCA §522(f) applies to judicial

64

## IN THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

In RE:  
BRADLEY J. YOUNG,                                )  
               Debtor,                            )  
1200 BUENA VISTA CONDOMINIUMS,     ) BANKRUPTCY CASE NO. 11-26777-JAD  
               Movant,                            )  
               vs.                               ) DOCKET NO.  
BRADLEY J. YOUNG and RONDA J.          ) CHAPTER 13  
WINNECOUR, ESQUIRE, Trustee,           )  
                                )  
              Respondents.                  )  

## MOTION TO DISMISS THIS CASE

AND NOW comes 1200 Buena Vista Condominiums, by and through its attorneys,

GRIFFITH, McCAGUE & WALLACE, P.C., a professional corporation, and moves this

Honorable Court to dismiss the above captioned case, and in support thereof represents as

follows:

    1      The docket and proceedings of the prior case filed by this Debtor at Docket No.

09-24934-JAD are incorporated herein by reference as if set forth in full in this Motion.

    2.     The Movant and Respondent were parties to the litigation in the prior Bankruptcy.

    3.     Respondent objected to the Movant's lien for condominium assessments in the

prior case, and had a full and fair opportunity to litigate all issues related thereto.

    4.     All of the elements of Movant's claim were at issue and were litigated.

    5.     On or about March 4, 2011 the Honorable Jeffrey Deller, Judge, entered a

Memorandum Opinion and an Order dismissing the Respondents objections to the Movant's

claim. The Memorandum Opinion and Order are incorporated herein by reference as Exhibit

"A".

    6.     The said Order was not appealed and is a final adjudication.

7.      Respondent is barred by the doctrine of res judicata and issue preclusion from contesting Movant's claim again in the present Bankruptcy.

8.      Subsequently, Movant filed an objection to Respondent's Plan in the prior case.

9.      All parties had a full and fair opportunity to litigate all issues related to how Movant's claim must be provided for in a Chapter 13 Plan.

10.     On or about March 23, 2011 the Honorable Jeffrey Deller, Judge, entered an Order which is incorporated by reference and attached hereto as Exhibit "B". Said Order sets forth the specific requirements which must be included in any amended plan filed by the Debtor.

11.     The issues in the new bankruptcy case as between this creditor and the debtor are the same as those litigated in the prior case which lead to the said Order, and both parties had a full and fair opportunity to be heard.

12.     The Order dismissing the prior case dated July 21, 2011 is also incorporated herein by reference and attached hereto as Exhibit "C". In particular, the case was dismissed because the Debtor failed to comply with the Order dated March 23, 2011 and the Debtor's failure to file an amended plan that complied with said Order.

13.     The prior Order of March 23, 2011 is res judicata as to the issue of what must be included in a Chapter 13 Plan as to this creditor, the Movant.

14.     Respondent/Debtor cannot now be heard on the same issues, and may not be heard with new arguments on those same issues. Everything that was or could have been raised has been concluded by the prior Order.

15.     The plan filed in the current bankruptcy case at Docket No. 3 (corrected at Docket No. 7) does not comply with Judge Deller's Order of March 23, 2011.

16. Dismissing the prior case and re-filing a new one for the sole purpose of avoiding

Judge Deller's prior Order is additionally an abuse of the bankruptcy system and a bad faith

filing.

WHEREFORE the Movant requests this Honorable Court to dismiss this case with

Prejudice.

GRIFFITH, MCCAGUE & WALLACE, P.C.
a professional corporation

By: /s/S. James Wallace
PA. No. 28815

/s/Regina M. Sestak
PA. No. 23632

GRIFFITH, McCAGUE & WALLACE, P.C.
The Gulf Tower, 38th Floor
707 Grant Street
Pittsburgh, PA 15219
412/803-3690

Motion, paragraphs 6 and 7.

The United States Court of Appeals for the Third Circuit has set forth the elements of

federal "issue preclusion", stating:

> The elements for collateral estoppel are satisfied when: "(1) the issue sought to be
> precluded [is] the same as that involved in the prior action; (2) that issue [was] actually
> litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination
> [was] essential to the prior judgment." . *Nat'l R.R. Passenger Corp. v. Pa. PUC,* 288 F.3d
> 519, 525 (3d Cir.2002), *cert. denied,* 538 U.S. 1057, 123 S.Ct. 2220, 155 L.Ed.2d 1107
> (U.S.2003).

*National Railroad Passenger Corporation v. Pennsylvania Public Utility Commission,* 342 F.3d

242, 252 (3d Cir. 2003).

The issues in the 506 Action in the 2011 Case are:

   a.)   what is fair market value Property on the "petition date",
   b.)   what is the amount and priority of other liens on Property, and
   c.)   what "collateral value", if any, is left for the Association's lien; and

are *different* from those raised and *actually litigated* in the Claims Objection Proceeding in the

2009 Case:

   d.)   were $8,648.00 of the Association assessments authorized the Condominium's
         Bylaws, Declarations and meetings of the Associations;
   e.)   were the amount of assessments otherwise proper given the water/sewage bills,
         insurance bills and legal fees; and
   f.)   were these issues actually raised in the non-jury action in the Court of Common
         Pleas.

Compare, **Exhibit "1"** and **Exhibit "2"** of the Debtor's Response. The Debtor should not be

collaterally estopped from prosecuting the Section 506 Action.

## C.   Section 1322(b)(2) of the Code does not apply to "statutory liens" or "judicial liens", only "security interests"i.e. "consensual liens", as the Third Circuit has held.

In its Response to the Stay Motion ("Stay Response"), the Association argues:

14

68

"The condo lien is protected by § 1322(b) as a lien secured solely by the Debtor's principal residence. It cannot be stripped or reduced by a 506 action where there is some value to which it attaches and under these circumstances therefore must be paid in full in any confirmable plan.

Stay Response, paragraph 7b.

The United States Court of Appeals for the Third Circuit ("Third Circuit") has held Section 1322(b)(2) of the Code does not apply to a "statutory lien", stating:

Section 1322(b)(2) of the Bankruptcy Code provides that Chapter Thirteen plans may "modify the rights of holders of *secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence*." 11 U.S.C. § 1322(b)(2) (emphasis added). ...paid in full in any confirmable plan.

The Bankruptcy Code defines "security interest" as "a lien created by an *agreement*." 11 U.S.C. § 101(51) (emphasis added). In contrast, the Code provides that the term "statutory lien" means a "lien arising *solely by force of a statute* on specified circumstances or conditions ... but *does not include security interest* or judicial lien." 11 U.S.C. § 101(53) (emphases added). Because plaintiffs' tax liens arose under state statute, and not from a consensual or voluntary agreement ..., we concur in the bankruptcy court's ruling that those liens are not "security interests" for purposes of § 1322(b)(2).

....

The foregoing interpretation of § 1322(b)(2) is supported by substantial authority from other jurisdictions. *See, e.g., In re DeMaggio*, 175 B.R. 144, 146-47 (Bankr.D.N.H.1994) ...

In light of the plain language of § 1322(b)(2), however, we must decline plaintiffs' invitation to speculate as to the intent of Congress in this context. Where the statutory language is clear, our " 'sole function ... is to enforce it according to its terms.' " *Rake v. Wade*, 508 U S. 464, 471, 113 S.Ct. 2187, 2191, 124 L.Ed.2d 424 (1993) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989)).

*Rankin v. De Sarno*, 89 F.3d 1123, 1127-1128 (3d Cir. 1996).

The Association's statutory[10] and judgement lien may be "modified"because Section

---

[10] To avoid the holding of the Third Circuit in *Rankin v. DeSarno*, the Association will argue it "statutory lien" is a *consensual*, "statutory lien' because the Declaration of

1322(b)(2) of the Code does not preclude it ... and, if unsupported by collateral value, avoided.

D.   **The Association's attack on the Debtor's appraisal value is evidenced by an Opinion which is not supported by it's own "comparable sales", is biased and is arguably "incompetent" for lack of an interior inspection.**

In its Stay Response, the Association argues:

The Debtor's appraisal is suspect in the extreme...Tom Yargo, a broker manager with Coldwell Banker.. has issued a preliminary Opinion of Value ... . His conservative value of the Debtor's unit "as is" is $50,000.00. A true and copy of the Opinion.... is ... attached as Exhibit "C".

Stay Response, paragraph 7b.

Tom Yargo ("Yargo") is not an appraiser; he is a real estate broker. While he is *arguably* "competent" to give an "opinion of value", the weight it is given is for a fact finder. Yargo's "opinion of value" is not entitled to *any* weight because:

1)   the "comparable sales" attached to Yargo's "Opinion of Value" do not support his $50,000.00 valuation; two of the five "comparable sale" are $25,000.00 or less and *the average sale price of the five "comparable sales" is $31,900.00 much closer ($6,900.00) to the Debtor's valuation of $25,000.00*, than the Association's $50,000.00 valuation ($18,100.00 higher than his "comparable sales");

2)   Yargo is "close friend" of Paul Georg, the head of the Association and the only other "unit owner" in the Association, and therefore, he is biased (and the Debtor will testify to these facts); and

_____

Condominium refers to right to lien for condominium assessments. Article V, Section 4 of the Declaration states, in part: "All sums assessed ... against a Unit for the share of the Common Expenses... shall constitute a lien against the affected Unit *in accordance with the Act* ...". The lien of the Association arises from a *statute*, 68 Pa.C.S. § 3315, which the Declaration refers to as "the Act". The statute states: "The association has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes due". The lien does *not arise by a recital of that statutory right in the Declaration.* The Declaration is not a "security agreement" and pledges no security interest in property, let alone, an interest in land; nor was it signed by the Debtor. The Association's lien is a statutory lien; not "consensual lien", a lien created *by agreement*. As the Third Circuit noted, it can't be both.

16

In re Robinson, 231 B.R. 30 (1997)
21 Collier Bankr.Cas.2d 934

231 B.R. 30
United States Bankruptcy Court,
D. New Jersey.

In the Matter of Elzena R. ROBINSON, Debtor.

Bankruptcy No. 97–15551. | Oct. 29, 1997.

Chapter 13 debtor moved to reclassify condominium association's secured claim as general unsecured claim and to "strip off" association's lien. The Bankruptcy Court, Judith H. Wizmur, J., held that prohibition against "stripping down" a claim secured only by security interest in real property which is Chapter 13 debtor's principal residence also precluded Chapter 13 debtor from "stripping off" the junior lien of condominium association for unpaid condominium fees, in case where value of property was less than amount of senior mortgage indebtedness and debtor lacked any equity to secure condominium association's claim.

Motion denied.

**Attorneys and Law Firms**

*30 Judith S. Schwartz, West Collingswood, New Jersey, for debtor.
Judith Jennings, Medford, New Jersey, for Village of Timber Creek Condominium Association.

Opinion

### AMENDED OPINION

JUDITH H. WIZMUR, Bankruptcy Judge.

We have before the court for resolution debtor's motion seeking to reclassify the condominium association's secured claim as a general unsecured claim and to "strip off" the association's lien because it is wholly undersecured.

### FACTS

The debtor, Elzena R. Robinson, filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on June 12, 1997. The debtor scheduled her personal residence at 1008 Timber Creek Village, Lindenwold, New Jersey with a fair market value of $48,000.00, subject to a first mortgage in the amount of $63,015.00 held by Norwest Mortgage, Inc. Debtor listed the Village of Timber Creek Condominium Association ("the *31 Association") as an unsecured creditor holding a claim in the amount of $2,000.00 for outstanding condominium fees. Debtor's proposed plan envisioned payments of $400.00 per month for 12 months, followed by $525.00 per month for 48 months with payment in full to counsel, the IRS, and the Camden County MUA. Arrearages owed to Norwest were to be cured through the plan. Claims held by Franklin Acceptance Corporation and Levitz Furniture were to be crammed down. Unsecured creditors were to receive nothing.

On July 3, 1997, the Association filed an objection to the debtor's plan, asserting that it held a secured interest in the debtor's principal residence as a result of a lien for past due condominium fees. As of the date of the debtor's petition, the Association claims it was due $3,359.83. The Association filed a secured proof of claim in that amount on July 15, 1997, with reference to a judgment dated March 1, 1996.

On August 13, 1997, the debtor moved to reclassify the Association's asserted secured claim as a general unsecured claim pursuant to the cram down provisions under 11 U.S.C. § 506. Because the debtor's personal residence was overencumbered as a result of Norwest's mortgage, the debtor contends that the Association's claim has nothing to attach to and should be reclassified

WestlawNext © 2011 Thomson Reuters. No claim to original U.S. Government Works. 1



EXHIBIT

A

In re Robinson, 231 B.R. 30 (1997)
41 Collier Bankr. Cas. 2d 934

as a general unsecured claim without priority. Since the Association does not hold a "secured claim" for purposes of § 506(a), it is not protected by the anti-modification provisions of § 1322(b)(2).

### DISCUSSION

I    At issue in this case is the interplay between 11 U.S.C. § 506 and 1322(b)(2) as interpreted by the Supreme Court in *Nobelman* and as applied in the context of stripping off wholly undersecured junior interests. We note first in this respect that the Association disputes its characterization as a wholly undersecured creditor. There appears to be some dispute over the valuation of debtor's principal residence and of the amount due to Norwest.

Debtor has scheduled the fair market value of her condominium as $48,000.00, and the Association has offered two HUD–1 Settlement Statements as evidence that debtor's property is undervalued. The Association notes that the debtor purchased her property on September 30, 1994 for $54,500.00. The Association contends that debtor's property is more properly valued around $55,000. Norwest has filed a proof of claim in this case in the amount of $61,407.93. Regardless of whether we accept the debtor's valuation or the Association's valuation, the Association's position would still be wholly undersecured.

Section 1322(b)(2) of the Bankruptcy Code provides that the debtor's plan may:

modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1322(b)(2). At issue here is the language "rights of holders of secured claims."[1] The interplay of this particular **\*32** section with section 506(a) in the context of an undersecured homestead mortgage was addressed by the United States Supreme Court in *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

1    As a preliminary matter, we find that the proper characterization of the Association's lien is as a security interest. The Association argues at different points in its briefs that its interest is a security interest and then later that it is a statutory lien. The confusion occurs because the Association's lien is supported both by the Association's bylaws and by state law. *See* By–Laws, Section D. Defaults in Payment of Assessments.

A Unit Owner shall, by acceptance of title, be conclusively presumed to have agreed to pay his proportionate share of Common Expenses accruing while he is the Owner of a Unit. The Association shall have a lien on each Unit for any unpaid assessment ... together with interest thereon, court costs and attorneys' fees, if any are incurred by the Board or Association in collecting such assessment. Such lien shall be effective from and after the time of recording in the public records of Camden County of a claim of lien... Such claim of lien shall include only sums which are due and payable when the claim of lien is recorded.

*See also* N.J.S.A. 46:8B-21 ("The association shall have a lien on each unit for any unpaid assessment duly made by the association for a share of common expenses ... upon proper notice to the appropriate unit owner."). We conclude that the Association's lien is a security interest agreed to by the parties and provided for by statute. *See* 11 U.S.C. § 101(53).

In *Nobelman*, the debtors proposed under their Chapter 13 plan to bifurcate the claim held by American Savings Bank against the debtors' principal residence into secured and unsecured claims and then to reduce the mortgage to the fair market value of the residence. The debtors proposed to pay the fair market amount plus prepetition arrearages through their plan, and to discharge the remaining unsecured portion of American's claim. *Id.* at 326, 113 S.Ct. at 2108–09. In response to the bank's objection, the debtors argued that "Section 506(a) provides that an allowed claim secured by a lien on the debtor's property 'is a secured claim to the extent of the value of [the] property'; to the extent the claim exceeds the value of the property, it 'is an unsecured claim.' " *Id.* at 328, 113 S.Ct. at 2109. "Under this view, the bank is the holder of a 'secured claim' only in the amount of ... the value of the collateral property." *Id.*

The Court declined to adopt this view of section 506(a), stating that this "interpretation fails to take adequate account of § 1322(b)(2)'s focus on 'rights.' " *Id.* The Court explained that section 1322(b)(2):

In re Robinson, 23° B.R. 30 (1997)
41 Collier Bankr.Cas.2d 934

does not state that a plan may modify "claims" or that the plan may not modify "a claim secured only by" a home mortgage. Rather, it focuses on the modification of the "rights of holders" of such claims. By virtue of its mortgage contract with petitioners, the bank is indisputably the holder of a claim secured by a lien on petitioners' home.

*Id.* at 328–29, 113 S.Ct. at 2109–10.

The Court recognized that a portion of the bank's claim exceeded the value of the collateral and qualified as an unsecured component of the bank's claim under § 506(a) however, the Court stressed that "that determination does not necessarily mean that the 'rights' the bank enjoys as a mortgagee, which are protected by § 1322(b)(2), are limited by the valuation of its secured claim." *Id.* at 329, 113 S.Ct. at 2110. The term "rights" is not defined by the Code, but appears to refer to the mortgagee's rights under the relevant security documents and state law. *Id.* With respect to a mortgagee, the Court found those rights to include "the right to repayment of the principal in monthly installments over a fixed term at specified adjustable rates of interest, the right to retain the lien until the debt is paid off, the right to accelerate the loan upon default and to proceed against petitioners' residence by foreclosure and public sale, and the right to bring an action to recover any deficiency remaining after foreclosure." *Id.* "These are the rights that were 'bargained for by the mortgagor and the mortgagee,' and are rights protected from modification by § 1322(b)(2)." *Id.* at 329–330, 113 S.Ct. at 2110 (quoting *Dewsnup v. Timm,* 502 U.S. 410, 417, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992)).

The Court declined to apply the "rule of the last antecedent" under which "the operative clause 'other than a claim secured only by a security interest in ... the debtor's principal residence' must be read to refer to and modify its immediate antecedent, 'secured claims.' " *Id.* at 330, 113 S.Ct. at 2111. Instead, the Court found that:

> Congress chose to use the phrase "claim secured ... by" in § 1322(b)(2)'s exception, rather than repeating the term of art "secured claim." The unqualified word "claim" is broadly defined under the Code to encompass any "right to payment, whether ... secured] or unsecured" or any "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether ... secure[d] or unsecured."

*Id.* at 334, 113 S.Ct. at 2111. Therefore, the Court determined to read " 'a claim secured only by a [homestead lien]' as referring to the lienholder's entire claim, including both the secured and the unsecured components of the claim." *Id.* Accordingly, "Section 1322(b)(2) prohibits ... a modification where, as here, the lender's claim is secured only by a lien on the debtor's principal residence." *Id.* at 332, 113 S.Ct. at 2111.

**\*33** Following the Supreme Court's decision in *Nobelman,* two lines of cases have evolved with respect to the debtor's ability to strip down or strip off wholly undersecured security interests. Both lines rely upon language quoted from *Nobelman.*

The debtor urges us to adopt the reasoning presented in *In re Lam,* 211 B.R. 36 (9th Cir. BAP 1997). In *In re Lam,* the court concluded that the "*Nobelman* decision prohibiting the removal of a partially unsecured claim is decidedly different from requiring a chapter 13 debtor to continue to pay the mortgage contract when the mortgage lien attaches to nothing and the lien ceases to be a secured claim." "If a lien has no 'security' interest in the property of a debtor, its status as a lien is questionable." *Id.* The "rights" of such a lien holder would be "empty rights from a practical, if not a legal, standpoint." *Id.* The court pointed out that:

> A forced sale of the property would not result in any financial return to the lienholder, even if a forced sale could be accomplished where the lien attaches to nothing. Nothing secures the "right" of the lienholder to continue to receive monthly installment payments, to retain the lien until the debt is paid off, or the right to accelerate the loan upon default, if there is no security available to the lienholder to foreclose on in the event the debtor fails to fulfill the contract payment obligations.

*Id.*

Turning to the *Nobelman* decision, the court agreed with those decisions which concluded that under *Nobelman,* " 'the mortgagee must qualify as the holder of a secured claim to some extent as determined by § 506(a).' " *Id.* (quoting *In re Plouffe,* 157 B.R.

In re Robinson, 231 B.R. 30 (1997)

4 Collier Bankr.Cas.2d 934

198, 200 (Bankr.D.Conn.1993)). "*Nobleman's* reference to section 506(a) is 'meaningless unless some portion of the claim must be secured under § 506(a) analysis before the creditor is entitled to retain the rights it has under state law.' " *Id.* (quoting *In re Williams*, 161 B.R. 27, 29–30 (Bankr.E.D.Ky.1993)). This conclusion is consistent with the legislative history, reflecting congressional intention to protect home mortgage lenders, that "because second mortgagees are not in the business of lending money for home purchases, the same policy reasons for protection of first mortgagees under section 1322(b)(2) do not exist for second mortgagees." *Id.* at 41.

The majority of courts have agreed that strip off of wholly unsecured liens is permissible. *See, e.g., In re Purdue*, 187 B.R. 188 (S.D.Ohio 1995); *Wright v. Commercial Credit Corp.*, 178 B.R. 703 (E.D.Va 1995); *In re Libby*, 200 B.R. 562 (Bankr.D.N.J.1996); *In re Lee*, 177 B.R. 715 (Bankr.N.D.Ala.1995); *In re Thomas*, 177 B.R. 750 (Bankr.S.D.Ga.1995); *In re Castellanos*, 178 B.R. 393 (Bankr.M.D.Pa.1994); *In re Mitchell*, 177 B.R. 900 (Bankr.E.D.Mo.1994). *See In re Barnes*, 207 B.R. at 592 for other cases. *See also* 8 LAWRENCE P. KING, JR., COLLIER ON BANKRUPTCY, ¶ 1322.06[1] [a][i] at 1322–21 (15th Rev.Ed.1997) ("The Nobleman opinion strongly suggests ... that if a lien is completely undersecured, there would be a different result. The opinion relies on the fact that, even after bifurcation, the creditor in the case was 'still the "holder" of a "secured claim" because petitioners' home retain[ed] $23,000 of value as collateral.' ")

Recently a second line of cases has developed which declines to allow the debtor to strip off wholly undersecured liens. The Association urges us to follow this line of cases.

In *In re Barnes*, 207 B.R. 588 (N.D.Ill.1997), the court acknowledged the number of cases allowing strip down of a wholly undersecured lien, but declined to adopt the "still the holder" dicta of *Nobelman*. The court pointed out that:

> If § 1322(b)(2)'s protection against modification were limited solely to security interests with underlying collateral, junior mortgages with a single penny of equity in collateral in the debtor's principal residence would still retain complete protection from a stripdown while junior mortgagees who lacked that penny of equity would find their entire claim stripped off. Nobleman did not foster this absurd result because that decision did not delineate that any level of equity protecting the secured creditors is required for § 1322(b)(2) protection. Instead, *Nobelman* flatly held that "[s]ection 1322(b)(2) prohibits [a
>
> **\*34** § 506(a) ] modification where, as here, the lender's claim is secured only by a lien on the debtor's principal residence." *Id.* at 593 (quoting *Nobelman*, 508 U.S. at 332, 113 S.Ct. at 2111). The court discounted the concurring opinion in *Nobelman*, which referred to § 1322(b)(2)'s policy of protecting the home lending market as not being reflected in either the majority opinion or the actual statute. *Id. Barnes* concluded that "[u]ntil Congress chooses to limit § 1322(b)(2) in some way, all mortgagees holding security interests in a debtor's principal residence receive protection against any modification of their rights, and may receive increased economic protection of their interest from growing real estate value over the three to five year life of the Plan. Should that value rise, the creditor stands to benefit thereby, and the debtor may not capture such increase in value through a § 506(a) stripoff." *Id.* at 594.

Other courts have agreed that strip off is not permissible. *See, e.g., In re Neverla*, 194 B.R. 547 (Bankr.W.D.N.Y.1996) (literal and functional interpretation of statute prohibits modification irrespective of value); *In re Jones*, 201 B.R. 371 (Bankr.D.N.J.1996). *See also* 1 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 4.46 at 4–56 (2d ed. 1994) ("The clear implication of this analysis is that even a completely unsecured claim holder 'secured' only by a lien on real property that is the debtor's principal residence would be protected from modification by § 1322(b)(2), notwithstanding that such an 'unsecured' lienholder could not have an allowable secured claim under § 506(a).").

We agree with the analysis provided by Judge Schmetterer in *In re Barnes* and Judge Stripp in *In re Jones*.

A court analyzing a 'stripoff' situation in Chapter 13, therefore, should look first to whether the creditor holds a mortgage secured only by the debtor's principal residence. If so, the creditor's rights under § 1322(b)(2) may not be modified regardless of the presence or absence of underlying equity in the residence, and there is no right to look to § 506(a) for valuation. A mortgage stripoff epitomizes a modification of creditor rights and is not allowed in Chapter 13 under § 1322(b)(2) and Nobelman.

In re Robinson, 231 B.R. 30 (1997)
41 Collier Bankr. Cas 2d 934

207 B.R. at 592. "The trigger for Justice Thomas's protection of rights analysis [in *Nobelman* ] is the existence of a lien, not the presence of value to support that lien." LUNDIN, § 4.46 at 4–56. The *Nobelman* court specifically rejected the debtor's argument that the application of § 1322(b)(2) depends first on a § 506(a) assessment "to determine the value of the mortgagee's 'secured claim'." 508 U.S. at 328, 113 S.Ct. 2106. Rather, as Judge Stripp recognized in *Jones*, "the existence of a mortgage lien .. determines the application of § 1322(b)(2), and not the value of the collateral subject to that lien." 201 B.R. at 374.

2   To the extent that the debtor is seeking to strip off the Association's lien, which is secured only by the debtor's principal residence, the debtor's action is proscribed by application of § 1322(b)(2). In this regard, we note that there is some question as to the extent that the Association's lien is valid. The lien filed by the Association was in the amount of $705.85 for amounts due through November 20, 1995. The notice of lien includes a statement that: "Additional charges, including, but not limited to additional assessments, interest, attorney fees and costs of collection, may hereafter accrue and shall be added to the amount due until fully paid and satisfied." This statement, to the extent that it was intended to create a lien that would be augmented by subsequent delinquencies, appears to contradict both the Association's By-Laws and N.J.S.A. 46:8B-21. N.J.S.A. 46:8B-21 provides in relevant part:

The association shall have a lien on each unit for any unpaid assessment duly made by the association for a share of common expenses or otherwise, together with interest thereon and, if authorized by the master deed or by-laws, reasonable attorney's fees. Such lien shall be effective from and after the time of recording in the public records of the county in which the unit is located of a claim of lien stating the description of the unit, the name of the record owner, the amount due and the date when due. *Such claim of lien shall include only sums which are due and payable* *35 *when the claim of lien is recorded and shall be signed and verified by an officer or agent of the association.*

N.J.S.A. 46:8B-21 (emphasis added). The Association's lien is valid only as to the amount due at the time it was recorded, here, $705.85. We have no evidence in the record that the Association obtained a lien for any of the other prepetition amounts due and owing. Accordingly, these amounts must be viewed as unsecured claims.

3   Parenthetically, it should be noted that the Association is correct to contend that the debtor retains responsibility to pay post-petition condominium assessments as they are due. *See* 11 U.S.C. § 503(b).

We conclude that to the extent the condominium association holds a lien against debtor's property, i.e., $705.85, the security interest of the Association cannot be reclassified to unsecured status, regardless of the value of debtor's property. Debtor's motion to reclassify is granted to the extent that the remainder of the Association claim may be designated as unsecured.

Debtor's counsel shall submit an order in conformance herewith.

Parallel Citations

41 Collier Bankr. Cas 2d 934

2011 Thomson Reuters. No claim to original U.S. Government Works.

End of Document

DECLARATION OF CONDOMINIUMS

ARTICLE I

SUBMISSION; DEFINED TERMS

Section 1.  Declarant; Property; County; Name.  Albert M.
Piccher and Glenn M. Miller, having their principal place of
business at 1201 Monterey Street, Pittsburgh, Pennsylvania
15212 ("Declarant"), owners in fee simple of the land described
in Exhibit "A" attached hereto, located in the City of Pittsburgh,
Allegheny County, Pennsylvania ("Land"), hereby submits the Land,
together with all easements, rights and appurtenances thereunto
belonging ("Property") to the provisions of the Pennsylvania
Uniform Condominium Act, 68 Pa. C.S. § 3101 et. seq. ("Act"),
and hereby creates with respect to the Property a condominium,
to be known as "1200 Buena Vista Condominiums" ("Condominium").

Section 2.  Easements.  The Land is so submitted:

(a)  Subject to reservation of coal and mining rights,
oil and gas leases, rights of way, easements, covenants, re-
strictions or conditions as set forth in prior instruments of
record and rights of way for utilities now or hereafter estab-
lished or granted by Declarant.

Section 3.  Defined Terms.

(a)  Capitalized terms not otherwise defined herein,
in the By-Laws or in the Plats and Plans, as the same may be
amended from time to time, shall have the meanings specified
or used in the Act.

(b)  The following terms are used or defined in general
terms in the Act and shall have specific meanings hereunder and
under the By-Laws as follows:

(1)  "Association" means the unit owners' associa-
tion of the Condominium.  The "Executive Board" shall act on be-
half of the Association.

(2)  "Building" means a building on the Land.

(3)  "By-Laws" means the By-Laws for the Association.

-1-

VOL6819 PG 604

## ARTICLE V

### POWERS OF ASSOCIATION, RESERVES, ASSESSMENTS

Section 1. Association Right to Acquire Portions of the Property. The Association may acquire title to or lease any Unit whose Unit Owner desires to surrender, sell or lease the same, or any Unit which may be subject to foreclosure or other judicial sale, in the name of the Association or their designees, corporate or otherwise, and may convey, sell, lease, mortgage (but not vote the votes appurtenant thereto) or otherwise deal with any such Units.

Section 2. Reserve Accounts. The Association shall have the power to create working capital, reserve for replacement, and contingency accounts, and to assess the Unit Owners for contributions to the said accounts in accordance with their Percentage Interest of the Common Elements. Said accounts shall be managed by Association in accordance with this Declaration, the By-Laws and the Rules and Regulations.

Section 3. Exterior Maintenance. In addition to maintenance upon the Common Elements, the Association shall as a Common Expense provide exterior maintenance upon the building as follows: paint, repair, replace and care for roofs, gutters, downspouts, exterior building surfaces, trees, shrubs, grass, walks, and other exterior improvements. Such exterior maintenance shall not include glass surfaces or doors, Unit doors and window fixtures and balconies, except in the Common Elements. In the event that the need for maintenance or repair is caused through the willful or negligent act of the Unit Owner, his family, or guests, or invitees, the cost of such maintenance or repairs shall be added to and become a part of the assessment to which such Unit is subject.

Section 4. Assessment of Charges. All sums assessed by resolutions duly adopted by the Association against any Unit for the share of Common Expenses chargeable to that Unit shall constitute a lien against the affected Unit in accordance with the Act and also shall be the personal liability of the Owner of the Unit so assessed and shall, until fully paid, constitute a lien against such Unit which shall be enforceable as provided in the Act or as otherwise permitted by law.

In addition to the monthly assessments authorized above, the Association may levy and collect, in any assessment year, a special assessment for the purpose of defraying, in whole or in part, the cost of any construction, reconstruction, repair or replacement of a capital improvement upon the Common Elements, including fixtures and personal property related thereto, provided that any such assessment shall have the assent of a majority of the votes of the Unit Owners in accordance with the By-Laws.

(6) Special Assessments. The Executive Board may, subject
to Declaration, at any time levy a Special Assessment for extra-
ordinary expenditures, which shall be assessed against each Unit
Owner in proportion to their percentage interests, and which is
payable in a lump sum or otherwise as the Executive Board may
determine. The Executive Board shall give each Unit Owner notice
of such Special Assessment giving the amount and reasons therefor,
and such Special Assessment shall, unless otherwise specified in
the notice, become payable within the next monthly installment which
is due more than ten (10) days after delivery of such notice of
Special Assessment.

(7) Personal Liability. All sums duly assessed or charges
duly imposed aginst any Unit or Unit Owner hereunder or under the
Declaration shall constitute the personal liability of the Owner
of the Unit so assessed or charged.

(8) Interest. Any Assessment or installment thereof or
charge not paid when due shall bear interest at the rate of ten
percent (10%) per year; beginning fifteen (15) days after such
Assessment or installment is due.

(9) Lien for Assessment. The Association shall have a lien
on a Unit for any Assessment levied against that Unit from the time
the Assessment becomes due together with any interest payable
pursuant hereto. The Association's lien may be foreclosed in like
manner as a mortgage on real estate. If an Assessment is payable
in installments, the full amount of the Assessment becomes effective
as a lien from the time the first installment thereof becomes due.
In accordance with the provisions of Section 3315 of the Act,
such lien shall be prior to all other liens and encumbrances of a
Unit except:

(a) Liens and encumbrances recorded before the
recordation of the Declaration.

(b) MOrtgages and deeds of trust on the Unit securing
first mortgage holders and recorded before the due date of the
Assessment or the due date of the first installment payable on the
Assessment.

(c) Liens for real estate taxes and other governmental
assessments or charges against the Unit. Recording of the
Declaration for the Condominium shall constitute record notice
and perfection of such lien.

(10) Collection of Delinquent Assessments. The Executive
Board shall take prompt action to collect Assessments for Common
Expenses or any installment thereof, together with accrued interest,
which remain unpaid after thirty (30) days from the date on which
such Assessment or installment thereof becomes due. Any such
delinquent Assessment together with such accrued interest may be
enforced by suit by the Executive Board acting on behalf of the
Unit Owners, including without limitation the delinquent Unit Owner.

-12-



23 N 41-1

# This Indenture

Made the _15t_ day of _NOVEMBER_ 19 9_

THERESA A. SULLIVAN and BRADLEY J. YOUNG, formerly
husband and wife,

*parties of the first part and*

BRADLEY J. YOUNG, individually,

*part y    of the second part:*

**Witnesseth.** *that the said part* ies *of the first part, in consideration of* ONE ($1.00)

DOLLAR and other good and valuable considerations

*to*    them     *now paid by the said party   of the second part, do   grant, bargain, sell*

*and convey unto the said part y of the second part,*   his heirs     *and assigns,*

All    that certain condominium unit situate in the 22nd Ward of the
City of Pittsburgh, County of Allegheny and Commonwealth of Pennsylvania,
being, Unit "A" in the 1200 Buena Vista Condominium as recorded in the
Office of the Recorder of Deeds of Allegheny County, Pennsylvania with
Declaration of Condominium in Deed Book Volume 6819, Page 602, together
with a 37% undivided interest in the Common Elements appurtenant
thereto.

TOGETHER WITH AND SUBJECT TO those rights, duties and obligations as
set forth in the aforementioned Declaration of Condominium and as
set forth in the By-Laws of the 1200 Buena Vista Condominium.

BEING the same property which Albert M. Pitcher and Madeleine F. Pitcher,
his wife, and Glenn M. Miller and Suellen Miller, his wife, by their
Deed dated December 20, 1985 and recorded in the Office of the Recorder
of Deeds of Allegheny County, Pennsylvania in Deed Book Volume 7220,
Page 57, granted and conveyed to Theresa A. Sullivan and Bradley J.
Young, the grantors herein.

This is a conveyance between Husband and Wife and is therefore, EXEMPT
from all transfer tax.



EXHIBIT
F

VOL. 8599 PAGE 13

*with the appurtenances;* **To Have and to Hold** *the same unto and for the use of the said*

*part y of the second part , his heirs and assigns forever,*

*And the said parties of the first part*

*for their heirs heirs, executors and administrators covenant s with the
said party of the second part his heirs and assigns against
all lawful claimants generally*

*the same and every part thereof to Warrant and Defend.*

NOTICE—THIS DOCUMENT MAY NOT ~~DOES NOT~~ SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO
THE COAL AND RIGHT OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO
HEREIN. AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE ~~MAY X~~ THE COMPLETE LEGAL RIGHT TO RE-
MOVE ALL OF SUCH COAL AND, IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE
LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. THE INCLUSION OF
THIS NOTICE DOES NOT ENLARGE RESTRICT OR MODIFY ANY LEGAL RIGHTS OR ESTATES OTHERWISE
CREATED, TRANSFERRED, EXCEPTED OR RESERVED BY THIS INSTRUMENT. [This notice is set forth in the
manner provided in Section 1 of the Act of July 17, 1957, P. L. 984, as amended, and is not intended as notice of unrecorded
instruments, if any.]

**Witness the hands and seals** *of the said part ies of the first part.*

*Witness:*

R. R. Stoll

THERESA A. SULLIVAN (SEAL)

X Bradley J. Young
BRADLEY J. YOUNG

**NOTICE** THE UNDERSIGNED, AS EVIDENCED BY THE SIGNATURE(S) TO THIS NOTICE
AND THE ACCEPTANCE AND RECORDING OF THIS DEED, (IS, ARE) FULLY COGNIZANT OF
THE FACT THAT THE UNDERSIGNED MAY NOT BE OBTAINING THE RIGHT OF PROTECTION
AGAINST SUBSIDENCE, AS TO THE PROPERTY HEREIN CONVEYED, RESULTING FROM COAL
MINING OPERATIONS AND THAT THE PURCHASED PROPERTY, HEREIN CONVEYED, MAY BE
PROTECTED FROM DAMAGE DUE TO MINE SUBSIDENCE BY A PRIVATE CONTRACT WITH
THE OWNERS OF THE ECONOMIC INTEREST IN THE COAL. THIS NOTICE IS INSERTED
HEREIN TO COMPLY WITH THE BITUMINOUS MINE SUBSIDENCE AND LAND CONSERVATION
ACT OF 1966.

WITNESS:

X Bradley J. Young
BRADLEY J. YOUNG

**Commonwealth of Pennsylvania**  } ss.
**County of** ALLEGHENY

*On this the* 1st *day of* NOVEMBER *, A.D. 19* 91 *,
before me the undersigned officer, personally appeared
known to me
(or satisfactorily proven) to be the person whose name subscribed to the within in-
strument and acknowledged that executed the same for the purposes therein contained.
In Witness Whereof, I hereunto set my hand and official seal.*

*My commission expires* (Title of Officer)

VOL. 8599 PAGE 14

STATE OF MISSOURI
~~Commonwealth of Pennsylvania~~

County of ST. LOUIS COUNTY } ss.

On this 18th day of July
A.D. 19 91 , before me
in and for said

came the above named

*Theresa A Sullivan*

~~acknowledged the foregoing Indenture to be~~
act and deed, to
~~the end that it may be recorded as such.~~
~~Witness my hand and~~                    seal.
(SEAL)

My Commission Expires 10/3/94

State of Pennsylvania
County of Allegheny

On this, the 1st day of November, 1991
before me Sandra L. Truver
the undersigned officer, personally appeared

BRADLEY J. YOUNG

known to me (or satisfactorily proven) to be the
person whose name subscribed to the
within instrument and acknowledged that he
executed the same for the purposes therein con-
tained.
In Witness Whereof, I hereunto set my hand and
official seal.

My Commission Expires

Title of Officer
Sandra L. Truver, Notary Public
Pittsburgh, Allegheny County
My Commission Expires April 20, 1993

Certificate of Residence

I, Gary G. Gentile, attorney for grantee do hereby certify that his
precise residence is 1200-A Buena Vista, Pittsburgh PA 15212

Witness my hand this 5th day of November 1991

GARY G. GENTILE

From
THERESA A. SULLIVAN and BRADLEY J.
YOUNG, formerly Husband and Wife

To
BRADLEY J. YOUNG, individually

GOLDBERG, GENTILE
& VOELKER, P.C.
Gary G. Gentile, Esquire
Suite 1320
530 Grant Building
Pittsburgh, Pennsylvania 15219

Commonwealth of Pennsylvania
County of ALLEGHENY } ss.

Recorded on this 6th day of November
A.D. 19 91 , in the Recorder's office of the said County, in Deed Book,
Volume 8599 , page 13

Given under my hand and the seal of the said office, the day and year
aforesaid.

Recorder

VOL. 8599 PAGE 15

## IN THE UNITED STATES BANKRUPTCY COURT FOR
## THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | ) |
| BRADLEY YOUNG | )   **Bankruptcy No. 11-26777 JAD** |
| **Debtor** | )   **Chapter 13** |
| 1200 BUENA VISTA CONDOMINIUMS, | ) |
| **Movant,** | ) |
| vs. | )   **Related to Docket Nos 28,16** |
| BRADLEY YOUNG and RONDA J. | ) |
| WINNECOUR, Trustee | ) |
| **Respondents** | ) |

### DEBTOR'S REPLY MEMORANDUM OF LAW ON "THE ROBINSON CASE"

NOW, comes the Debtor, Bradley J. Young, by his counsel, Phillip S. Simon, and argues:

The Court in *In re Robinson*, 231 B.R. 30, 32 (note 1) (Bankr. D.N.J. 1997) found, under New Jersey law, the condominium association had *both* [1] a "consensual lien", based on it bylaws, and a "statutory lien" for unpaid assessments: "We conclude that the Association's lien is a security interest agreed to by the parties *and* provided for by statute." Emphasis added. The Court should not find *Robinson* persuasive on whether 1200 Buena Vista Condominiums ("Association") has a "consensual lien", a lien "created by agreement", *not* a "statutory lien", a lien "arising solely by force of a statute on specified circumstance or conditions", because:

1.) it is contrary to holding of this Court in *In re Johnson*, 108 B.R. 81 (Bankr. W.D.Pa. 1989) [2] decided under Pennsylvania law;

2.) it is contrary to the holdings of other courts reviewing condominium statutes in other jurisdictions, including *In re Stern*, 44 B.R. 15, 18 (Bankr. D. Mass.1984) (applying Massachusetts law); *In re Nettwick*, 79 B.R. 145,146 (Bankr. N.D.N.Y.) and *In re Eatman*, 182 B.R. 386, 391 (S.D.N.Y. 1995) (applying New York law);

---

[1] The lien cannot be "both" under the Code; the definition of a "statutory lien" in the Code specifically excludes a "security interest". 11 U.S.C. § 101(53) .

[2] The Association cited this case, with approval, in the "2009 Case". See, inter alia, Document No. 73, page 5.

1

3.)   under Pennsylvania's Condominium Act, "an agreement" or "bylaws" are not necessary for a lien *to arise*: "The association has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes due". 68 Pa. C.S. § 3315(a). The lien arises *automatically* on its due date after being levied;

4.)   a lien does *not arise by a recital of a statutory right in the bylaws.* The bylaws are not a "security agreement" signed by the Debtor and they cannot pledges a security interest in the *Debtor's* property; they are simply a corporate governance document of the Association (See, 68 Pa. C.S. §3306 for bylaws "mandatory terms") ; and

5.)   in *Robinson*, the Court found the Association's lien was "security interest" because the Association's bylaws *presumed* an agreement:

> *See* By–Laws, Section D. Defaults in Payment of Assessments:
> A Unit Owner shall, by acceptance of title, be conclusively *presumed to have agreed* to pay his proportionate share of Common Expenses accruing while he is the Owner of a Unit. The Association shall have a lien on each Unit for any unpaid assessment ...

*In re Robinson*, 231 B.R. at 32 (note 1); emphasis added. "Agreements" in bylaws or otherwise, are not "presumed" by what another party says. *Cumberland Perry Vocational-Technical School Auth. v. Bogat & Blink*, 261 Pa Super 350, 354, 396 A 2d 433, 435 (1978) citing 1 S. Williston, *Contracts* s 1 (3d ed. 1957 and Supp.1978);

6.)   in *Robinson,* the Court's analysis is self-contradictory because, although it held the lien was a "security interest", it looked to *the statute* to determine the *amount and validity* of lien:

> N.J.S.A. 46:8B–21 provides in relevant part:
> ... *Such claim of lien shall include only sums which are due and payable when the claim of lien is recorded and shall be signed and verified by an officer or agent of the association.* ...

> The Association's lien is *valid* only as to the amount due at the time it was recorded, here, $705.85...

*In re Robinson*, 231 B.R. at 34-35; emphasis in original *and* added.

2

1/4/2012
10:05:23 AM

| Search Results | New Search | Help | Subscription Login |

General Information



|<< |< 3 OF 3 >| >>|

## General Information

Parcel ID : 0023-N-00041-0001-00
Property Address : 1200 BUENA VISTA ST
                   PITTSBURGH, PA 15212

Municipality : 122  PITTSBURGH - 22ND WARD
Owner Name : YOUNG BRADLEY J

| | | | |
|---|---|---|---|
| School District : | City Of Pittsburgh | Neighborhood Code : | 12285 |
| Tax Code : | Taxable | Recording Date : | 11/6/1991 |
| Owner Code : | Regular | Sale Price : | $1 |
| State Code : | Residential | Deed Book : | 8599 |
| Use Code : | CONDOMINIUM | Deed Page : | 13 |
| Homestead : | Yes | Abatement : | Yes |
| Farmstead : | No | Lot Area : | 1,828 SQFT |

| 2012 Total Market Value | $161,200 | 2011 Market Value : | $31,000 |
|---|---|---|---|
| 2011 Full Market Value | | 2011 County Assessed Value | |
| Land Value | $22,000 | Land Value | $16,000 |
| Building Value | $9,000 | Building Value | $0 |
| Total Value | $31,000 | Total Value | $16,000 |

Address Information

Tax Bill Mailing : 1200 A BUENA VISTA ST
PITTSBURGH, PA 15212-4531

Owner Mailing : 1200 A BUENA VISTA ST
PITTSBURGH, PA 15212-4531

Send data errors to          |     Property Assessments Home Page     |     Legal Disclaimer
landhelp@alleghenycounty.us.

```
EXHIBIT
   6
```

## CERTIFICATE OF SERVICE

The undersigned certifies that on this _25th_ day of July, 2012, a true and correct copy of the Brief Appendix of the Appellant was served by first class U.S. Mail, postage prepaid or by e-mail transmission, as indicated below, on the following:

S. James Wallace, Esquire
Griffin, Wallace & McCague, P.C.
The Gulf Tower, 38th Floor
707 Grant Street
Pittsburgh, PA 15219
(service by e-mail transmission to sjw@gmwpclaw.com)
(Counsel for 1200 Buena Vista Condominiums and
1200 Buena Vista Unit Owners' Association )

Jeffrey R. Hunt, Esquire
Goehring, Rutter & Boehm
437 Grant Street
14th Floor
Pittsburgh, PA 15219
(service by e-mail transmission to jhunt@grblaw.com)
(Counsel for City of Pittsburgh and Allegheny County)

PNC Bank, N.A.
P.O. Box 94982
Cleveland, OH 44101
(service by first class mail)

_/s/_ Phillip S. Simon